UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAURIE ANN SMITH, Individually and as
Administratrix of the Estate of
Thomas J. Blancke, Sr., deceased,

                                  Plaintiff,

        v.

ADRIAN BAUGH,
GEORGE BROWN,
MICHAEL WOODARD,
JOHN AND JANE DOES,

                                  Defendants.
_____

                                         **DECISION**
                                            **and**
                                          **ORDER**

                                      **16-CV-906V(F)**

APPEARANCES:          THE COCHRAN FIRM
                      Attorneys for Plaintiff
                      STEPHANIE ROSE CORREA,
                      DEREK SCOTT SELLS, of Counsel
                      55 Broadway, 23rd Floor
                      New York, New York   10006

                      ERIC SCHNEIDERMAN
                      ATTORNEY GENERAL, NEW YORK STATE
                      Attorney for Defendants
                      CHRISTOPHER L. BOYD,
                      Assistant Attorney General, of Counsel
                      Main Place Tower
                      350 Main Street, Suite 300A
                      Buffalo, New York 14202

        In this Section 1983 action, referred to the undersigned by District Judge Vilardo

for all nondispositive pretrial motions by order filed June 14, 2017 (Dkt. 12), [1] Plaintiff

---

[1] Pretrial rulings on motions to amend pursuant to Fed.R.Civ.P. 15 referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) ("§ 636(b)(1)(A)") are non-dispositive. *See Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007) (denial of plaintiff's motion to amend based on futility subject to review as a non-dispositive motion under clearly or erroneous or contrary to law standard pursuant to § 636(b)(1)(A) and Fed.R.Civ.P. 72(a)); *Hall v. Norfolk Ry. Co.*, 469 F.3d 590, 595 (7th Cir. 2006) (magistrate judge's denial of plaintiff's motion to amend to add time-barred claim against new defendant pursuant to Fed.R.Civ.P. 15(c)(1)(C) non-dispositive for purposes of review under Fed.R.Civ.P 72(a) as such denial "did not terminate" plaintiff's lawsuit but only prevented plaintiff from adding party as a defendant); *Midatlantic Framing, LLC v. Varish Constr. Co.,* 2017 WL 4011260, *24 n. 1 (N.D.N.Y. Sept.

alleges that named Defendants ("Baugh," "Brown," and "Woodard") (collectively, "named Defendants"), and unnamed defendants designated as "John and Jane Does" ("the Does" or "the Doe Defendants"), violated the Eighth Amendment rights of Thomas J. Blancke, Sr., Plaintiff's husband ("Blancke" or "decedent"), while Blancke was incarcerated at the Five Points Correctional Facility in Romulus, New York ("Five Points"). Plaintiff also asserts a state claim for loss of consortium. Specifically, Plaintiff alleges that in retaliation for Blancke's disruptive behavior stemming from his alleged bi-polar and ADHD disorders ("Blancke's disorders") for which Plaintiff alleges Defendants failed to provide adequate treatment prior to the incident giving rise to Plaintiff's claims ("the Blancke incident"), Dendants assigned another inmate, Brian J. Karris ("Karris"), who had been convicted of assaulting a disabled African-American as a hate crime as Blancke's cellmate[2] anticipating that Karris would physically assault Blancke and then failed to intervene to protect Blancke after the assault occurred and failed to provide prompt medical assistance to Blancke resulting in Blancke's death. During the early morning hours of December 14, 2013, following Karris's entry, the day before on December 13, 2013, into Blancke's cell, Karris and Blancke engaged in a fight resulting in the brutal beating death of Blancke for which Karris was subsequently tried and convicted in Steuben County Court of Second Degree Murder in November 2015. Before the court is Plaintiff's motion for leave to file an amended complaint in which

---

11, 2017) (ruling by magistrate judges denying motions to amend are non-dispositive as such rulings do not dispose of a claim or defense; court follows majority of Second Circuit caselaw holding such motions to be non-dispositive) (citing *Hall*, 469 F.3d at 594-95); *contra Briggs v. County of Monroe*, 215 F.Supp.3d 213, 215 (W.D.N.Y. 2015) (holding denial of motions to amend based on futility of proposed claims barred by statute of limitations are dispositive for purposes of Rule 72(a) requiring *de novo* review) (citing caselaw).

[2]   Referred to as "double-celling" or "double-bunking."

Plaintiff seeks to name 29 individuals supervisory officials, corrections officers and other employees of the New York State Department of Corrections and Community Supervision ("DOCCS") ("proposed defendants"), which maintains Five Points in substitution for the previously unnamed Doe Defendants named in the Complaint alleging that like the three Defendants each proposed defendant "participated directly in the unlawful activity as alleged in the Complaint" (Dkt. 21) ("Plaintiff's motion").  Plaintiff received on February 13, 2017, the names of the 29 proposed defendants, Five Points supervisory officers, corrections officers and other DOCCS personnel who had some connection with the Blancke incident, from the State of New York ("the State") as a result of the State's compliance with Plaintiff's discovery requests served in connection with Plaintiff's New York Court of Claims action which Plaintiff commenced on April 8, 2015, based on the State's alleged negligence in causing Blancke's death.

Plaintiff's motion is supported by Plaintiff's Memorandum Of Law In Support Of Plaintiff's Motion For Leave To Amend The Complaint (Dkt. 21-1) (Plaintiff's Memorandum"), filed October 20, 2017, together with Plaintiff's exhibits 1 – 11.  In support of Plaintiff's motion, Plaintiff explains that difficulties were encountered in obtaining information regarding the actual identity of all persons responsible for Blancke's lack of proper treatment and double-celling with Karris expecting that Karris's assignment would provoke a fight in order to "teach" Blancke "a lesson" for his supposed bad behavior as an inmate, Complaint ¶¶ 19, 20.  Plaintiff also contends Plaintiff's diligence in obtaining such information warrants granting Plaintiff's motion pursuant to Fed.R.Civ.P. 15(c)(1)(C) ("Rule 15(c)(1)(C)") and the New York Civil Practice Law & Rules § 1024 ("N.Y.C.P.L.R. § 1024" or "§ 1024") despite the fact that

3

the applicable three-year statute of limitations governing Plaintiff's action expired on

December 14, 2016.  Rule 15(c)(1)(C) permits a new party to be substituted for a Doe

defendant after expiration of the statute of limitations if the new party had sufficient

notice and should have known that but for plaintiff's mistake as to the party's identity the

party would have been sued provided such information is provided within 120 days of

the filing of the original complaint.  Section 1024 is applicable here under Fed.R.Civ.P.

15(c)(1)(A) because it is part of the applicable New York statute of limitations scheme

which could permit substitution, after expiration of the New York three-year statute of

limitations, by allowing substitution if the party seeking substitution of an unidentified

party was unaware of such identity and the identity becomes known later.[3]  For § 1983

actions arising in New York, New York's general three-year statute (N.Y.C.P.L.R. § 214)

of limitations for torts is applicable.  *See Hogan v. Fischer*, 738 F.3d 509-17 (2d Cir.

2013) (citing *Pearl v. City of Long Beach, N.Y.*, 296 F.3d 76, 79 (2d Cir. 2002)).  It is

well-settled that replacing a named party for a Doe defendant is a change in a party

requiring an amended complaint in accordance with Fed.R.Civ.P. 15(c).  *See Hogan*,

738 F.3d at 517 (citing *Aslandis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993)).

On November 13, 2017, Defendants filed Defendants' Memorandum Of Law In

Opposition To Plaintiff's Motion (Dkt. 25) ("Defendants' Memorandum") contending that

Plaintiff has failed to meet the due diligence and notice requirements of Rule 15(c)(1)(C)

---

[3] "A party who is ignorant, in whole or in part, of the name or identity of a person who may properly be made a party, may proceed against such person as an unknown party by designating so much of his name and identity as is known. If the name or remainder of the name becomes known all subsequent proceedings shall be taken under the true name and all prior proceedings shall be deemed amended accordingly."  N.Y.C.P.L.R. § 1024 (McKinney's 1962).

and § 1024, that Plaintiff's proposed Amended Complaint fails to state a claim, and therefore, on either ground, Plaintiff's motion is futile, *see Briggs v. County of Monroe*, 2016 WL 1296060, *4 (W.D.N.Y. Mar. 4, 2016) (proposed amendment to add claims by naming John Doe Defendants may be denied where proposed amendment would be subject to dismissal and thus futile), *report and recommendation adopted*, 215 F.Supp.3d 213 (W.D.N.Y. 2016), and, as such, should be denied. *See also Foman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend may be denied were proposed amendment is found to be, *inter alia,* futile). Defendants also contend Plaintiff's motion lacks a good faith basis and if granted, would be prejudicial to Defendants. Defendants' Memorandum at 19-23; Plaintiff's Reply Memorandum Of Law In Further Support Of Plaintiff's Motion For Leave To Amend The Complaint, together with Plaintiff's exhibits 12 – 17 (Dkt. 24-2 through 24-7), was filed November 21, 2017 (Dkt. 24) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

1.      Rule 15(c)(1)(C).

        In order to obtain the relation back benefit of Rule 15(c)(1)(C), permitting, as relevant here, the naming of a John or Jane Doe party by substitution of a correctly named defendant after expiration of the statute of limitations, the party seeking to invoke Rule 15(c)(1)(C) must show that within the 90-day period for service of summons required by Fed.R.Civ.P. 4(m) following the filing of a complaint, the new party to be named received sufficient notice of a plaintiff's claim that avoids prejudicing the proposed new party's defense, and such party knew or should have known the action would be brought against him or her "but for a mistake concerning the proper party's

identity."[4]  However, "lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity'" for Rule 15(c)(1)(C) purposes.  *Hogan*, 738 F.3d at 518 (quoting *Barrow v. Wetherfield Police Dep't.*, 66 F.3d 466, 470 (2d Cir. 1995)); *see also Scott v. Village of Spring Valley*, 577 Fed.Appx. 81, 82-83 (2d Cir. 2014) (plaintiff's unawareness of identity of proposed defendants does not qualify as a mistake for purposes of Rule 15(c)(1)(C)).  In this case, Plaintiff argues that because the Complaint, filed November 10, 2016, informed Doe Defendants that they were accused of failing to provide proper medical treatment for Blancke's disorders, purposefully assigning Karris as Blancke's cell-mate expecting Karris would assault Blancke as 'punishment' for Blancke's supposed misconduct, and the prospective Doe Defendants' failure to intervene promptly in Karris's brutal assault upon Blancke resulting in Blancke's death, the Doe Defendants had sufficient notice within the required 90-day period of Plaintiff's claims.  The Complaint alleges such failure to protect against named Defendants Baugh and Brown, Complaint ¶¶ 10-11; and named Defendant Woodard is identified as a DOCCS sergeant, Complaint ¶ 12; however, other than Plaintiff's general allegation of Defendants "participating in the unlawful activity" alleged in the Complaint, no specific allegation of actionable conduct is directed to Woodard.  *Id.*  As regards the Doe Defendants, as with the three named Defendants, other than as generally alleged against all Defendants, a fair perusal of the Complaint indicates a complete lack of any descriptive information of the Doe Defendants or their personal involvement in the events leading to Blancke's death sufficient to be considered as adequate notice that

---

[4]  Fed.R.Civ.P. 4(m) was amended in 2015 to reduce to 90 days the former 120-day period for service.

they were the intended targets of Plaintiff's lawsuit under Plaintiff's failure to treat and failure to protect Eighth Amendment claims.  *See Hogan*, 738 F.3d at 519 (plaintiff required under Rule 15(c)(1)(C) to "describe the John Doe party in such form as will fairly apprise the party that he is the intended defendant"); *Cruz v. Fischer*, 175 F.Supp.3d 33, 38 (W.D.N.Y. 2016) ("complaint does not adequately describe the John Doe defendants such that they would be put on notice of plaintiff's claim against them"); *Armenio v. Holder*, 2016 U.S. Dist. LEXIS 101203, at *12 (S.D.N.Y. Aug. 1, 2016) (motion to dismiss granted where amended complaint failed to provide "'substantial detail concerning appearance'" of Doe Defendants "that would give them notice that they are the intended defendants") (quoting *Hogan*, 738 F.3d at 519 (quoting *Bumpus v. N.Y.C. Transit Auth.*, 883 N.Y.S.2d 99, 104 (2d Dep't 2009))).  Here, as noted, Plaintiff allege only that the Doe Defendants were DOCCS "individual officers, corrections officers, guards, personnel and/or employees" working at Five Points who "participated in the unlawful activity that is the subject of this Complaint."  Complaint ¶ 13. However, even considering that Blancke was then unavailable to Plaintiff in formulating the Complaint, there is no indication in the Complaint or Plaintiff's motion papers that he would have been able to provide further descriptive information for any of the 29 Doe Defendants Plaintiff now seeks to add.  Rather, it is apparent that this burden is one that fell to Plaintiff at the outset of Plaintiff's presumed investigation of Blancke's death prior to filing this action.  That Plaintiff may have been hampered in Plaintiff's ability to provide sufficient descriptive information of the Does to satisfy the notice requirement of Rule 15(c)(1)(C) does not relieve Plaintiff of this burden.  This court's research fails to yield any authority permitting relation-back relief under Rule 15(c)(1)(C) as to Doe

Defendants based on such a circumstance and Plaintiff points to none. For example, Plaintiff alleges four distinct forms of liability, including failure to treat Blancke, a maliciously motivated double-celling of Blancke with a potentially dangerous cell-mate, a failure to intervene in the ensuing assault on Blancke and a failure to promptly provide emergency assistance to Blancke. It is simply implausible that all 29 Doe Defendants were involved in each of the four forms of the alleged culpable conduct and thus Plaintiff's generalized assertions of their involvement do not provide the degree of notice and opportunity to prepare to defend required by Rule 15(c)(1)(C). *Cf. Ceara v. DOCCS Officer Joseph Deacon*, 2017 WL 363003, at *11 (S.D.N.Y. Jan. 23, 2017) (required notice under § 1024 satisfied where plaintiff in the complaint provided "detailed description, date, time, and specific location of incident <u>and defendant's precise conduct</u> to sufficiently notify [defendant] that he was the intended defendant," but failed to satisfy due diligence requirement of § 1024).[5]

Plaintiff's reliance on Rule 15(c)(1)(C) is also misplaced in that Rule 15(c)(1)(C) requires that the inability or failure to name an identifiable party was the result of Plaintiff's mistake as to the correct identity of an unnamed defendant. *See Hogan*, 738 F.3d at 519 (lack of knowledge not a mistake under Rule 15(c)(1)(C) as to a John or Jane Doe defendant's identity). Here, Plaintiff concedes that when Plaintiff filed this action on November 10, 2016, Plaintiff only knew the identity of three of the alleged defendants Plaintiff gleaned from the transcript of Karris's criminal trial which commenced and concluded, the year prior thereto, in November 2015. However, it is

---

[5]  Unless indicated otherwise underlining and bracketed material added.

well-settled that a plaintiff may not utilize the relation-back provision of Rule 15(c)(1)(C) in seeking to file an amended complaint to "add new defendants, where the newly added defendants were not named originally, because the plaintiff did not know their identities." *Wilson v. City of New York*, 2017 U.S. Dist. LEXIS 52539, at *8 n. 5 (S.D.N.Y. Apr. 4, 2017) (citing *Hogan*, 738 F.3d at 517), *report and recommendation adopted*, 2017 WL 2693599 (S.D.N.Y. June 19, 2017) ("Wilson").[6]  Simply, a "lack of knowledge of a John Doe defendant's name does not constitute a mistake of 'identify'" under Rule 15(c)(1)(C).  *Hogan*, 738 F.3d at 518 (quoting *Barrow*, 66 F3d at 470); *see also Cotto v. City of New York,* 2017 WL 3476045, at *4 (S.D.N.Y. Aug. 11, 2017) ("lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity'" (quoting *Hogan*, 738 F.3d at 518 (citing *Barrow*, 66 F.3d at 470))).  Thus, Plaintiff is unable to demonstrate the proposed amendments to add 29 defendants as new parties in substitution for the previously alleged Doe Defendants after the expiration on December 14, 2016 of the three-year limitation period satisfy both requirements of Rule 15(c)(1)(C), and Plaintiff's motion should be denied on these grounds.

2.    N.Y.C.P.L.R. § 1024.[7]

The court thus turns to Plaintiff's alternative ground to support the amended potentially available under Fed.R.Civ.P. 15(c)(1)(A) ("Rule 15(c)(1)(A)"), which allows a relation-back amendment to add named defendants in place of the previously alleged unidentified John or Jane Doe Defendants (hereinafter, "Doe Defendants"), after

---

[6]   To avoid unnecessary repetitive citations, further references to adoption by the district court of the report and recommendation in *Wilson* are not provided.

[7]   Although N.Y.C.P.L.R. provisions do not officially include section or rule symbols, *e.g.*, "§" or "R," such provisions are designated by § ___ herein.

expiration of the applicable limitations period where the relevant statute "allows relation back," *id.*, in this case, because the applicable three-year statute of limitations is based on New York law, N.Y.C.P.L.R. § 1024 which allows a previously unidentified party to be added after expiration of the statute of limitation provided the degree of prior notice to a Doe defendant and due diligence requirements mandated by § 1024 are satisfied. Because New York state law requirements govern the application § 1024, the court is required to apply them to the instant case. *See Hogan*, 738 F.3d at 519 (applying, pursuant to Rule 15(c)(1)(A), New York caselaw construing § 1024); *Wilson*, 2017 U.S. Dist. LEXIS 52539, at *8 (citing caselaw). Similar to the requirement of Rule 15(c)(1)(C), under § 1024 a plaintiff must show (1) that the unnamed Doe defendant for which identification is proposed after expiration of the statute of limitations had been described "in a way that fairly apprised the [later identified] actual party that she or he was the intended defendant," *Wilson*, 2017 U.S. Dist. LEXIS 52539, at *9 (citing *Hogan*, 738 F.3d at 518-19, and (2) that "the plaintiff . . . exercise[d] due diligence before the expiration of the statute of limitations to identify a . . . [Doe] defendant by name." *Id.* Strict compliance with § 1024's due diligence requirement is required under applicable New York law and "'*[a]ny failure* to exercise due diligence to ascertain the [Doe's] name subjects the complaint to dismissal [as time-barred] as to the party.'" *Id.* (italics in original) (citing *Hogan*, 738 F.3d at 518-19; *Strada v. City of New* York, 2014 WL 3490306, at *5 (E.D.N.Y. July 11, 2014) at *9-10 (quoting *Olivo v. City of New York*, 2015 WL 4645271, at *4 (E.D.N.Y. Aug. 4, 2015) (denying amendment to add a previously unnamed party where plaintiff failed to engage in due diligence); and citing *Bumpus v. City of New York Transit Auth.*, 883 N.Y.S.2d 99, 104 (2d Dep't 2009) (under

10

§ 1024 plaintiffs are required to show that they "exercise[d] due diligence, prior to the running of the statute of limitations, to identify the defendant by name and despite such efforts, . . . [were] unable to do so")).  Further, "[c]ourts assess whether a plaintiff engaged in due diligence by evaluating the various steps that the plaintiff <u>could</u> have <u>taken</u> <u>and</u> <u>did</u> <u>in</u> <u>fact</u> <u>take</u> to identify the actual name of the . . . [Doe] defendants prior to the expiration of the statute of limitations period."  *Wilson*, 2017 U.S. Dist. Ct. LEXIS 52539, at *10 (listing six discovery procedures available to a plaintiff to learn identities of Doe defendants in § 1983 action alleging false arrest and malicious prosecution (citing *Bumpus*, 883 N.Y.S.2d at 106-08)).  "Due diligence in this context 'requires that a plaintiff show that he or she made timely efforts to identify the correct party <u>before</u> the statute of limitations expired.'"  *Ceara v. Deacon*, 68 F.Supp.3d 402, 409 (S.D.N.Y. 2014) (quoting *Strada*, 2014 WL 3490306, at *5 (quoting *Justin v. Orshan*, 788 N.Y.S. 2d 407, 408 (2d Dep't 2005)) (internal quotation marks omitted)).  Relevant to the instant case, a plaintiff's failure to more timely initiate a § 1983 action in federal court to allow sufficient time to exercise various discovery devices available to litigants in such actions counts against a plaintiff who seeks relief pursuant to § 1024.  *See Ceara v. DOCCS Officer Joseph Deacon*, 2017 WL 363003, at *11 (S.D.N.Y. Jan. 23, 2017) (citing *Galberth v. Washington*, 2016 1255738, at *10 (S.D.N.Y. Mar. 29, 2016) (plaintiff failed to exercise due diligence to identify defendants by "wait[ing] more than two and one-half years after alleged misconduct to file his [§ 1983] [c]omplaint")); *Sherrard v. City of N.Y.*, 2016 WL 1574129, at *4 (S.D.N.Y. Apr. 15, 2016) ("plaintiff waited so long to bring his [federal court § 1983] action that he literally had no time to obtain and serve

a *Valentin*[8] order (which is routinely issued in this district) in order to identify the people he wanted to sue") (text in parentheses in original); *JCG v. Evcole*, 2014 WL 1630815, at *14 (S.D.N.Y. Apr. 24, 2014) (plaintiff could not satisfy first requirement of § 1024, because he waited until the statute of limitations had nearly run to file his § 1983 complaint and failed to engage in other methods such as discovery and FOIL requests or by letters to N.Y. State Attorney General seeking identity information with regard to Doe defendants to ascertain actual Doe defendants' identities), *report and recommendation adopted*, 2014 WL 2769120 (S.D.N.Y. June 18, 2014). Additionally, where responses to plaintiff's discovery demands are inadequate, a plaintiff's failure to follow-up by further demands or seek judicial intervention to obtain information needed to identify Doe defendants negates a finding of the due diligence required by § 1024. *See Wilson*, 2017 U.S. Dist. LEXIS 52539, at ** 11-12 (citing *Temple v. Cmty. Hosp. of Brooklyn*, 933 N.Y.S.2d 321, 322-23 (2d Dep't 2011).

In this case, several factors support finding that Plaintiff's allegations in the Complaint failed to provide all the Does with sufficient notice required by the notice criterion of § 1024. Specifically, as discussed with respect to the prior notice requirement of Rule 15(c)(1)(C), *supra*, at 7-8, it is implausible to infer that all of the 29 Does personally participated in decisions to deprive Blancke of required treatment for his alleged disorder and were also involved in the scheme to place Karris in Blancke's

---

[8] *Valentin v. Dinkins*, 121 F.3d 72, 76 (2d Cir. 1997) (requiring municipal defendant to assist *pro se* prisoner plaintiff to identify fully defendant to avoid dismissal based on failure to effect timely service) ("*Valentin* order"). Such orders (routinely issued to the N.Y. Attorney General in actions against DOCCS employees in this court) may be requested by counsel for § 1983 plaintiffs alleging wrongful death claims against allegedly responsible unidentified police officers. *See Vasconcellos v. City of New York*, 2014 WL 4961441, at * 9 (S.D.N.Y. Oct. 2. 2014).

cell for the purpose of instigating an assault on Blancke or failed to timely intervene to protect Blancke and provide more immediate medical assistance.  No other descriptive information is alleged by Plaintiff that could be considered as applying to particular corrections officers at Five Points, such as rank, work assignments or schedules, were included in Plaintiff's blanket allegation that all of the Doe Defendants participated in each of the alleged violations of Blancke's Eighth Amendment rights.  Accordingly, the court finds the Complaint does not satisfy the prior notice requirement of § 1024.  Even assuming such notice was provided, Plaintiff has failed to establish the degree of due diligence required under § 1024's first element to support Plaintiff's proposed post-statute of limitations amendments to substitute 29 proposed defendants in place of the Doe Defendants identified to Plaintiff by the State in the Court of Claims action in February 2017, after the expiration of the statute of limitations.

The first legal step in this matter taken by Plaintiff, who was appointed Blancke's administratrix on December 15, 2014,[9] was the filing on February 2, 2015 of a Notice of Claim alleging a failure to treat Blancke, Blancke's beating by Karris, and his wrongful death while in the custody of New York State employees, DOCCS corrections officers employed at Five Points.  Plaintiff's Exh. 5.  Plaintiff commenced her search for the identities of responsible DOCCS employees on January 20, 2015, by filing requests pursuant to N.Y. Public Officers Law § 85 *et. seq.* (McKinney's 1977) (" the FOIL Requests") to the New York Division of State Police, which was apparently the lead

---

[9]  A prior notice of claim prerequisite to a Court of Claims action was filed in February 2014, on behalf of Blancke's estate by Blancke's mother, but was later dismissed because his mother could not qualify as a proposed administratrix.  *See* Plaintiff's Reply, Dkt. 24 at 6 n. 2.

agency investigating Blancke's homicide, and DOCCS, referencing Blancke's homicide on December 14, 2013, requesting all "blotters, reports, investigations, photographs, autopsy reports, medical examinations, findings and conclusions with regard to the above-referenced incident."  Plaintiff's Exh. 3.  DOCCS's response, dated February 26, 2015, denied Plaintiff's request asserting an on-going investigation; the State Police's response, dated September 10, 2015, also denied Plaintiff's request on the basis of criminal charges that were then pending against Karris, and that the responsive records were exempt from disclosure as being prepared for law enforcement purposes citing N.Y. Pub. Officer Law § 87(2)(e)(i).  Plaintiff's Exh. 4.  No administrative appeal or judicial review of the denials was taken by Plaintiff.  As noted, Plaintiff's Court of Claims action alleging Blancke's wrongful death, and the State's negligence and negligent hiring and supervision was filed on April 8, 2015.  Plaintiff's Exh. 6.

As also noted, Plaintiff initiated her Court of Claims action by filing a Notice of Claim on February 2, 2015 alleging negligence by DOCCS's employees with respect to Blancke's safety resulting in Blancke's murder.  Plaintiff's Exh. 5.  Plaintiff's Court of Claims action was commenced as required within two years of the incident alleging wrongful death, negligence, violation of the State's duty to provide safe housing for incarcerated persons, and negligent hiring, supervision and training of the responsible DOCCS personnel.  Plaintiff's Exh. 6.  On June 19, 2015, Plaintiff served a combined discovery request, including interrogatories and document requests, on the defendant State of New York in Plaintiff's Court of Claims action.  Plaintiff's Exh. 10.  As relevant, Plaintiff's interrogatories requested, *inter alia*, the identities of all persons "responsible" for assigning Karris to Blancke's cell, and all persons involved in Blancke's treatment

while incarcerated by DOCCS, Plaintiff's Exh. 10 ¶¶ 2, 6, as well as Blancke's medical and mental health file. *Id.* ¶ 11; Plaintiff also requested records relating to the decision to place Karris in Blancke's cell, *id.* ¶ 15, a copy of the DOCCS Inspector General file regarding Blancke's death, *id.*, ¶ 21, and copies of relevant surveillance film records. *Id.* ¶ 28. There was no timely response by the State to Plaintiff's discovery requests. *See* Plaintiff's Exh. 8 (Dec. 21, 2015 Letter of Stephanie Correa, Esq. to Bonnie Gail Levy, Assistant N.Y. Attorney General) ("Ass't Att'y Gen. Levy") (confirming the State's failure to respond to Plaintiff's requests because of the previous pendency of Karris's trial); Plaintiff's Memorandum at 3 (referencing the State's "delayed response" dated February 13, 2017 to Plaintiff's discovery requests). Karris's criminal trial concluded November 20, 2015 with the jury's rejection of Karris's defense that he assaulted Blancke in self-defense which resulted in Karris's conviction of second degree murder. *See* Plaintiff's Exh. 7 at 747; 1104. On December 21, 2015, Plaintiff wrote to the State's defense counsel, Ass't Att'y Gen. Levy, reminding her of Plaintiff's outstanding, since June 2015, discovery demands and requesting the State's responses which had been refused until the Karris trial was concluded, *see* Plaintiff's Exh. 8, be served "by January 4, 2016." *Id.* The State again failed to respond and Plaintiff filed, on June 1, 2017, a year and one-half later, nearly two years after serving Plaintiff's discovery requests, and nearly six months after expiration of the statute of limitations in this action, a motion to compel such discovery. Plaintiff's Memorandum, Dkt. 21-1 at 6; Defendants' Memorandum, Dkt. 23, at 12.[10] No explanation appears in the record for Plaintiff's delay in filing

---

10   A copy of Plaintiff's motion to compel is not included in the record.

Plaintiff's motion to compel. In the State's opposition, dated August 2, 2017, to Plaintiff's motion to compel and in support of the State's cross-motion to dismiss Plaintiff's Court of Claims action for late filing of the Notice of Claim, Ass't Att'y Gen. Levy asserted the State had produced numerous records to Plaintiff, albeit partially redacted for reasons of privacy or as required by state law. *See* Plaintiff's Exh. 11 ¶ 3. The State also asserted Plaintiff's request for a copy of the DOCCS Inspector General's report on Blancke's homicide was barred as privileged under New York law and that Plaintiff's requests with respect to Brian Karris could not be provided, based on a public interest privilege, absent notice to Karris or his committee given that Karris was at the time incarcerated at a DOCCS psychiatric facility, *id.* ¶¶ 8, 38, but indicated the State would comply if the Court of Claims judge so ordered. *Id.* ¶ 39. The State also acknowledged that certain prison records relating to Karris, potentially responsive to Plaintiff's request, had been submitted to the Court of Claims judge for *in camera* review. *Id.* ¶ 16, 18. Similarly, the State advised Plaintiff should subpoena the State Commission on Corrections Report concerning Blancke's death which was also requested by Plaintiff explaining that the Attorney General did not represent the Commission and was therefore unable to require the Commission to comply with Plaintiff's request. Plaintiff's Exh. 11, Dkt. 21-14, ¶ 45. The record does not indicate Plaintiff pursued any of the State's suggestions. The State further suggested Plaintiff depose Lt. Marketos, one of the proposed defendants, regarding the DOCCS decision to approve Karris and Blancke to be double-celled. *Id.* at 17. The State also asserted many of the records sought by Plaintiff were, until the conclusion of Karris's trial in November 2016, unavailable to the State to be produced to Plaintiff. Dkt. 11 ¶ 12.

According to Plaintiff, Plaintiff's motion to compel in the Court of Claims action remains pending before the assigned judge of that court despite Plaintiff's two telephone calls to the judge's law clerk. Plaintiff's Memorandum, Dkt. 21-1, at 3. The instant action was commenced on November 10, 2016. As noted, on February 13, 2017, the State produced, in response to Plaintiff's June 2015 demand, a list of 52 names and numerous documents regarding the decision to double-cell Karris and Blancke. Plaintiff's Exh. 9 ¶¶ 1, 2; Defendants' Memorandum, Dkt. 23, at 16.[11] Defendants answered in this action on June 14, 2017. On September 8, 2017, Defendants provided Plaintiff with disclosures in this action pursuant to Fed.R.Civ.P. 26(a)(1) which included the names of prospective witnesses all of whom were also listed by the State in its February 13, 2017 response to Plaintiff's discovery demands in Plaintiff's Court of Claims action. Plaintiff served Plaintiff's interrogatories and document requests in this action on September 22, 2017. Defendants' Memorandum, Dkt. 23, at 25.

Based on this history, the court finds Plaintiff has failed to satisfy § 1024's due diligence requirement for several reasons. First, and most obviously, by waiting until November 2016 to file, approximately five weeks before expiration on December 13, 2016, of the statute of limitations, the instant action despite learning the identity of the three named Defendants from the testimony available in the transcript of Karris's November 2015 trial,[12] Plaintiff severely limited Plaintiff's ability to exercise the full

---

[11] The State also produced a "CD/DVD . . . [which included] various intake and screening documents as well as double cell approval [*sic*] with respect to Thomas Blancke." Plaintiff's Exh. 9 ¶ 2.

[12] Plaintiff does not indicate when Plaintiff obtained a copy of the transcript from which Plaintiff also learned the identities of several other Five Points corrections officers, Edick, Maloy, and Lt. Reese, who are included in Plaintiff's proposed amended complaint and who testified at the trial, including several corrections officers who responded to Blancke's injuries on December 14, 2013. Defendants' Memorandum at 14 (referencing Karris's trial transcript).

range of discovery devices available in a federal civil action capable of yielding the identities of the 29 Doe Defendants whom Plaintiff seeks to substitute. Had Plaintiff filed this action earlier, Plaintiff could have availed herself of the liberal discovery available in federal civil actions including prompt judicial assistance if confronted with opposition defense tactics. *See Ceara*, 2017 WL 363003, at *11 (no due diligence as required by § 1024 where plaintiff waited two and one-half years to file § 1983 action); *JCG*, 2014 WL 1630815, at 14 (S.D.N.Y. Apr. 24, 2014) (failure to initiate § 1983 action until statute of limitations had nearly run preventing effective use of [federal court] discovery for identity of Doe Defendants precluded relief under § 1024). In an earlier filed action, Plaintiff could have availed herself of the benefit of a Valentin order and, if necessary, further discovery of the identity of the Doe Defendants available by serving interrogatories pursuant to Fed.R.Civ.P. 33(b)(1) particularly useful in a case like this where a primary fact witness is unavailable to assist in a pre-suit investigation of the subject matter of the prospective action. *See Wilson*, 2017 U.S. Dist. LEXIS 52539, at *10 (pointing to plaintiff's failure to avail himself of discovery available through interrogatories to obtain identity of "prospective defendants" as indicating plaintiff failed to engage in due diligence required by § 1024). For example, although the Inspector General's report Plaintiff requested in the Court of Claims action may, as the Assistant Attorney General asserted, have been privileged under state law, such would not necessarily prevent discovery of the report in this court. *See, e.g., Vega v. Hatfield*, 2011 WL 13128745, at *1 (W.D.N.Y. Sep't 19, 2011) (DOCCS Inspector General report related to alleged assault on prisoner plaintiff held discoverable under law enforcement

privilege in plaintiff's § 1983 after *in camera* review) (citing *In re City of New York,* 607 F.3d 923, 944 (2d Cir. 2010))).

Moreover, as relates to the instant case, if Plaintiff had earlier determined to commence this § 1983 action against then unidentified Five Points corrections officers and supervisory personnel, responsible for Blancke's medical care and safety, Plaintiff could have sought the pre-action disclosure of such necessary identification information pursuant to N.Y. C.P.L.R. § 3102(c) ("§ 3102(c)"),[13] and upon obtaining such information thereby avoided asserting claims against the Doe Defendants as does the instant action. *See Wilson*, 2017 U.S. Dist. Lexis 52539, at * 10 (plaintiff's failure to utilize § 3102(c) as a pre-suit disclosure device to obtain the identities of "John Smith" police officer defendants for use in plaintiff's § 1983 action is indicative of plaintiff's failure to exercise due diligence required for relation-back relief pursuant to § 1024) (citing *Bumpus*, 883 N.Y.S.2d at 106 (stating availability of § 3102(c) to access, *inter alia,* "identities of prospective defendants")); *see also Olivo*, 2015 WL 4645271, at *6 (plaintiff's failure to timely utilize § 3102(c) to timely obtain two John Doe defendant police officers' names for use in plaintiff's § 1983 action alleging Plaintiff's false arrest indicative of plaintiff's failure to satisfy § 1024 due diligence prerequisite for relation-back relief).

---

[13] A special proceeding seeking pre-suit information pursuant to § 3102(c), *see Robinson v. Gov't of Malaysia*, 664 N.Y.S.2d 907, (Sup. Ct. Kings Cty. 1997) (absent jurisdiction over the parties and filing of a complaint, § 3102(c) disclosure should be brought by a special proceeding), requires a petitioner show the existence of a meritorious claim and relevance of the requested material from respondent in possession of such material. *Bishop v. Stevenson Commons Assocs., L.P.*, 905 N.Y.S.2d 29, 30 (1st Dep't 2010), *leave to appeal denied*, 924 N.E.2d 319 (N.Y. 2011) (Table). Such relief is discretionary with the court. *Id.*

Although Plaintiff in the pending Court of Claims action requested on June 19, 2015, the identity of persons who were responsible for the double-celling of Blancke and Karris, Plaintiff's Exh. 10 ¶ 2, and witnesses to Karris's attack on Blancke, *id.* ¶ 7, as noted, *supra*, at 12, upon receiving no timely response, Plaintiff failed to move to compel such important information until June 2017, well after the statute of limitations for this case expired on December 14, 2016. Significantly, Plaintiff provides no explanation why Plaintiff failed to more timely seek judicial assistance in the state Court of Claims action to compel the identification of proposed defendants for use in Plaintiff's § 1983 action pursuant to Plaintiff's interrogatories, as Plaintiff could have done. Under § 1024, courts, in assessing whether a plaintiff has exercised due diligence, are required to consider whether a plaintiff took the various steps the plaintiff "could have taken and did in fact take to identify the actual name of . . . [Doe] defendants prior to the expiration of the statute of limitations period." *Wilson*, 2017 U.S. Dist. LEXIS 52539, at *10.

Nor, contrary to Plaintiff's assertions, Plaintiff's Memorandum, Dkt. 21-1, at 9, do Plaintiff's FOIL requests satisfy the due diligence requirement of § 1024. As explained, *supra*, at 13-14, Plaintiff filed two such requests in early 2015 – one to the New York State Police, the other to DOCCS. The requests were identical in seeking, *inter alia,* investigation reports, and findings "with regard to the above-referenced incident [the Blancke homicide]." Relevantly, such requests did not, however, particularize any request by Plaintiff for the identity of persons who were responsible for providing treatment for Blancke's alleged bi-polar and ADHD disorders; neither, as did Plaintiff's later interrogatory requests, did Plaintiff's FOIL requests specifically seek the identity of

the DOCCS personnel who were involved in the decision to assign Karris to Blancke's cell or those responsible for providing medical care to Blancke and Blancke's safety. Under the New York Freedom of Information Law, the exclusion from access for identification information is limited to that of a confidential source, not the identity of officials involved in alleged unconstitutional conduct such as an illegal arrest or Eighth Amendment deprivations. *See* N.Y. Pub. Officers Law § 87[2][e][iii]; *Bumpus*, 883 N.Y.S.2d at 107 (citing N.Y. Pub. Officers Law § 89 as basis for disclosure of name of prison guards accused of improper behavior) (citing *Matter of Faulkner v. Del Giacco,* 529 N.Y.S.2d 255, 258 (Sup. Ct. Albany Cnty. 1988)). Nor is it likely such identification information could impair the pending criminal case against Karris as if following disclosure Plaintiff attempted to depose the officers who may have been scheduled to testify at the Karris criminal trial, the State could request a stay of discovery pending completion of the officers' testimony in Karris's trial, even assuming such a stay had been requested by the District Attorney. A properly formed FOIL request could have also yielded work schedules and assignments from which the identity of DOCCS personnel with a connection to Blancke's treatment double-celling, and other responsibilities relevant to Plaintiff's claims could be determined. *See Bumpus*, 883 N.Y.S.2d at 107. As the New York Court of Appeals has recently stated, "FOIL exemptions are to be narrowly read" and "FOIL was not designed to assist wrongdoers in evading detection." *Abdur-Rashid v. N.Y. City Police Dep't,* ___ N.E.2d ___, 2018 WL 1524722, at **2, 3 (N.Y. Mar. 29, 2018). Although the FOIL's law enforcement exemption, N.Y. Pub. Officers Law § 87[2][e][i], protects against disclosure of witness identification and statements to avoid impairing the prosecutor's strategies in pending

criminal cases, *see Matter of Lesher v. Hynes*, 968 N.E.2d 451, 457-58 (N.Y. 2012),

only six of the 29 proposed defendants in this matter testified at Karris's trial thus

supporting that if Plaintiff pursued an administrative appeal or judicial review of

Plaintiff's FOIL denials, or immediately following Karris's trial renewed Plaintiff's

requests, Plaintiff could have obtained substantial and earlier compliance with a well-

framed and targeted FOIL request.  As such, Plaintiff's FOIL requests were not drafted

in a manner calculated to produce the information necessary to timely assert § 1983

claims available to Plaintiff under New York law against such persons and it is

undisputed that Plaintiff did not exercise Plaintiff's right to an administrative appeal of

the respective denials, *see* N.Y. Pub. Officers Law § 89[4](a), seek judicial relief, *see*

N.Y.Pub. Officers Law § 89[4](b), or promptly renewed such requests.  Such inactions

by Plaintiff represent examples of steps Plaintiff could have taken to satisfy the due

diligence requirement of § 1024 but failed to timely do so which, under New York law,

weigh against finding Plaintiff complied with § 1024's due diligence requirement.

Although Plaintiff relies on Plaintiff's preliminary FOIL requests and Plaintiff's

2016 discovery requests served in the Court of Claims action as evidence of Plaintiff's

due diligence to obtain the earlier identity of the Doe Defendants needed for this action,

Plaintiff's argument overlooks that to rely on § 1024, court's require that a plaintiff not

only exercise some discovery devices then available to a plaintiff, but also consider the

devices plaintiff counsel could have exercised to obtain the Doe defendant's names but

did not.  *See Ceara*, 2017 WL 363003, at *11 (plaintiff failed to satisfy due diligence

requirements of § 1024 while upon receiving less than adequate discovery responses

plaintiff "failed to promptly seek further discovery . . ." and judicial assistance); *Wilson*,

2017 U.S.Dist. LEXIS 52539, at * 9 (citing *Olivo*, 2015 WL 4645271, at *4 ("New York

courts stress [ ] *any failure* to exercise due diligence" (italics in original) (citing *Bumpus*,

883 N.Y.S.2d at 103)). "Courts assess whether a plaintiff engaged in due diligence by

evaluating the various steps that the plaintiff <u>could</u> <u>have</u> <u>taken</u> <u>and</u> <u>did</u> <u>in</u> <u>fact</u> <u>take</u> to

identify the actual name of the [Doe defendants] . . .." *Wilson*, 2017 U.S. Dist. LEXIS

52539, at *10.  Moreover, even if the pendency of Karris's trial could have temporarily

hindered obtaining through Plaintiff's FOIL requests the identities of those DOCCS

employees having responsibility for Blancke's medical needs, Karris's placement in

Blancke's cell, and the alleged delay in responding to Karris's assault on Blancke, there

is no indication in the record that Plaintiff promptly renewed Plaintiff's FOIL requests to

seek such identity information upon the conclusion of Karris's trial in November 2015.

Plaintiff moreover fails to indicate why such a renewal and presumably successful

request, under applicable New York law, *see, e.g., Bumpus*, 883 N.Y.S.2d at 107, was

not made at a time when a response could have produced such information by early

2016, well-before the expiration of the statute of limitations more than one year later in

this case.

Nor is there any merit to Plaintiff's belated request, first raised in Plaintiff's Reply,

Dkt.  24 at 10, in response to Defendants' contention that even if Plaintiff could satisfy

the other requirements of § 1024, *i.e.*, notice and due diligence, Plaintiff nevertheless

failed to serve the recently identified, on February 13, 2017, 29 proposed defendants

within 120 days after Plaintiff commenced this action on November 10, 2016, or March

10, 2017, as required by N.Y.C.P.L.R. § 306-b.[14]  Defendants' Memorandum, Dkt. 23-4, at 15-16 (citing *Barrett v. City of Newburgh, N.Y.*, 2017 WL 1102672, at *5 n. 9 (S.D.N.Y. Mar. 23, 2017) (N.Y.C.P.L.R. § 306-b requires service upon John Doe defendant of amended complaint with defendant's correct name within 120 days of filing of complaint) (citing caselaw); *Drake v. Lab. Corp. of Am. Holdings,* 2009 WL 2867901, at ** 6-7 (E.D.N.Y. Sep't 3, 2009) (to avoid running of statute of limitations plaintiff seeking to name John Doe defendants required by N.Y.C.P.L.R. § 306-b to identify and serve such defendants within 120 days), *aff'd*, 417 Fed.Appx. 84 (2d Cir. 2011). N.Y.C.P.L.R. § 306-b is considered under New York statute of limitations as an integral part of the "following provisions," including § 1024, provided under such law.  *See Gullo v. City of New York,* 2012 U.S.Dist. LEXIS 189573, at *17 (S.D.N.Y. May 21, 2012) ("Courts have read this provision [§ 1024] in conjunction with Section 306-b of the C.P.L.R.") (citing caselaw), *report and recommendation adopted*, 2012 U.S. Dist. LEXIS 146863 (S.D.N.Y. Oct. 11, 2012).  Specifically, Plaintiff now requests the court enlarge the 120-day period for good cause or in the interest of justice as permitted by C.P.L.R. § 306-b, Plaintiff's Reply, Dkt. 24, at 10 (citing *Bumpus*, 883 N.Y.S.2d at 108-09 (reviewing factors relevant to a finding of good cause and alternative "broader interest of justice factors" to support plaintiff's motion for such relief noting that while such motions

---

[14] "Service of the summons and complaint, summons with notice, third-party summons and complaint, or petition with a notice of petition or order to show cause shall be made within one hundred twenty days after the commencement of the action or proceeding, provided that in an action or proceeding, except a proceeding commenced under the election law, where the applicable statute of limitations is four months or less, service shall be made not later than fifteen days after the date on which the applicable statute of limitations expires. If service is not made upon a defendant within the time provided in this section, the court, upon motion, shall dismiss the action without prejudice as to that defendant, or upon good cause shown or in the interest of justice, extend the time for service."  N.Y.C.P.L.R. § 306-b (McKinney's 2012).

need not be brought prior to expiration of initial 120-day period, a party's promptness in making the request is a "specific factor that is to be considered by courts in determining 'interest of justice' extensions" (citing *Leader v. Maroney, Panzini & Spencer,* 761 N.E.2d 1018, 1025 (N.Y. 2001))), to allow Plaintiff to serve the 29 proposed defendants at this time, assuming the court were to grant Plaintiff's motion.  For § 306-b purposes, good cause requires a showing of plaintiff's reasonable diligence in attempting service, or that failure to effect service resulted from circumstances beyond plaintiff's control, *Bumpus*, 883 N.Y.S.2d at 105; extensions based on the interest of justice criterion include, in addition to a party's diligence in ascertaining the Doe Defendants' correct identity, "expiration of the statute of limitations, the meritorious nature of the action, the length of delay in service, the promptness of a request by the plaintiff for an extension, and prejudice to the defendant." *Id.* at 106.  Here, Plaintiff argues Plaintiff exercised diligence by filing two FOIL requests, requesting discovery in the Court of Claims action, reviewing the Karris trial transcript, and a follow-up communication with Ass't Atty Gen. Levy in Plaintiff's attempt to identify the Doe Defendants and to effect timely service, but was impeded in that effort by the agency denials of Plaintiff's earlier FOIL requests and the State's delayed, February 13, 2017, response to Plaintiff's prior discovery demands, and that the State's response did not particularize the nature of the identified persons' relationship to or knowledge of Plaintiff's claims to enable Plaintiff's use of the information in filing an amended complaint and timely serving the Defendants.  Plaintiff's Memorandum, Dkt. 24 at 14.  Plaintiff also points to the fact that the statute of limitations has expired.  *Id.*

Plaintiff's request fails for several reasons. First, as discussed, *supra*, at 9-25, contrary to Plaintiff's assertion, Plaintiff did not exercise due diligence in Plaintiff's attempt to obtain early identification of the Doe Defendants for purposes of initiating the instant action and, because Plaintiff therefore cannot rely on § 1024 to substitute at this time the 29 proposed defendants thus rendering Plaintiff's proposed amended complaint time-barred, whether Plaintiff can support a belated request to extend the 120-day period required by § 306-b based on a showing of good cause is unnecessary. Further, even assuming Plaintiff's proposed amended complaint seeking to substitute 29 new parties for the Doe Defendants is not time-barred based on § 1024, can Plaintiff demonstrate an extension is warranted in the interest of justice. Plaintiff received the names of the persons Plaintiff now seeks to substitute on February 13, 2017, yet made no request for an extension of time to serve these proposed defendants until the issue was raised in Plaintiff's Reply filed November 21, 2017 in response to Defendants' argument in opposition to Plaintiff's motion that Plaintiff failed to effect timely service, as required by § 1024. Plaintiff, represented from the outset by counsel, provides no justification for such obvious dilatoriness. As to the potential merits of Plaintiff's claims, as discussed, *infra*, at 30-34, the court finds Plaintiff has failed to plausibly allege a claim. Further, a careful review of the Complaint reveals only repetitive and conclusory assertions of Defendants' liability particularly with regard to Plaintiff's allegations that as prison guards Defendants arranged to place Karris in Blancke's cell for the malicious purpose Plaintiff alleges – to "punish" Blancke for his supposed misbehavior caused by Blancke's ADHA and bi-polar disorders. As such, this claim, as well as the others asserted by Plaintiff, appears to be, as pleaded, based on unsupported speculation and

26

thus lacking in merit. The same deficiencies characterize Plaintiff's attempt to substitute

29 new parties for the Doe Defendants in the proposed amended complaint, making

them also the subject of Plaintiff's allegations, without providing any additional facts.

While the statute of limitations has expired, it is also the case that the parties have

initiated extensive discovery in this case and, as discussed, *infra*, at 34-37, allowing

Plaintiff to amend and serve 29 new defendants at this time will significantly burden

Defendants and prolong the efficient disposition of the case resulting in manifest

prejudice to Defendants. *See Walker v. Hormann Flexon, LLC*, 59 N.Y.S.2d 614, 615

(3d Dep't 2017) (motion to dismiss amended complaint adding previously unidentified

defendant denied where plaintiff failed to make diligent efforts to ascertain unknown

party's identity prior to expiration of three-year statute of limitations or "seek leave to

extend the time for service"); *Albany Plattsburgh United Corp. v. Bell*, 763 N.Y.S.2d 119,

124 (3d Dep't 2003) (affirming trial court's denial of motion to amend complaint to assert

29 new claims against two additional defendants which trial court determined would

require significant additional discovery and be too burdensome where case had been

pending nine years and trial date already set), *leave to appeal denied*, 808 N.E.2d 1273

(N.Y. 2004).[15] Although Plaintiff asserts that Plaintiff complied with the October 20,

2017 deadline established by the Scheduling Order, Dkt. 16, in timely filing the instant

---

[15] Although not dispositive of the issues presented on Plaintiff's motion, Defendants also point out, correctly, that Plaintiff could have served an amended complaint as of right pursuant to Fed.R.Civ.P. 15(a)(1)(B) until July 5, 2017, or 21 days after Defendants filed their Answer but failed without explanation to do so further demonstrating Plaintiff's lack of attention to this important issue. Defendants' Memorandum, Dkt. 23, at 16. However, such amended complaint would nevertheless presumably have been subject to Defendants' inevitable motion to dismiss as time-barred and without the benefit of relation-back relief under § 1024 as discussed herein.

motion, Plaintiff's Reply, Dkt. 24 at 10, Plaintiff's assertion does not support extending §

306-b's service period.  If Plaintiff required additional discovery to enable Plaintiff to

identify the Doe Defendants correctly and plausibly allege Plaintiff's claims against them

in an amended complaint, Plaintiff should have requested an amendment to the

Scheduling Order for good cause required by Fed.R.Civ.P. 16(b) to enlarge the time to

seek to file an amended complaint as well as an enlargement of the 120-day period

required by § 306-b within which to serve the parties to be substituted.  Plaintiff,

however, took no such actions.

Further, Plaintiff does not deny that in the Court of Claims action defendant State

of New York also produced with its January 2017 response various documents including

a copy of the Unusual Incident Report from which the identity of the potential Doe

Defendants in this action may have been obtainable.  As Defendants point out, *see*

Defendant's Memorandum, Dkt. 23, at 17, the identities of all of the Doe Defendants

Plaintiff now seeks to include in the proposed amended complaint were identified to

Plaintiff in the State's January 2017 Response to Plaintiff's discovery requests, the

Unusual Incident Report, or were mentioned in various memoranda produced by the

State; moreover, six of these persons testified in Karris's criminal trial the transcript of

which was extensively reviewed by Plaintiff in order to file this action.  *Id.*  Finally, while

it is true that Plaintiff requested from Ass't Att'y Gen. Levy in December 2015, shortly

after completion of Karris's trial in November 2015, a prompt – January 2016 –

response, *see* Plaintiff's Exh. 8, when such response was not received Plaintiff made no

effort to seek judicial assistance from the assigned Court of Claims judge, until Plaintiff

filed Plaintiff's motion to compel in June 2017 in that court order to obtain more

complete responsive information. Although as Plaintiff asserts, Plaintiff's Memorandum, Dkt. 21-1 at 5, Karris's intervening criminal trial created a temporary obstacle to obtaining full and earlier discovery in Plaintiff's Court of Claims action, when that discovery did not materialize as Plaintiff expected, Plaintiff should have realized the statute of limitations for Plaintiff's putative § 1983 action in this court was running and would expire within the following year, *i.e.*, by December 14, 2016, and accordingly have been prompted to initiate a pre-action disclosure request for identification of allegedly culpable defendants pursuant to § 3102(c), renew Plaintiff's FOIL requests, request a *Valentin* order, and immediately commence her § 1983 action to allow for discovery procedures to be implemented by Plaintiff in this court especially directed to the early identification of the Doe Defendants in this action, should for some reason the § 3102(c) special proceeding, FOIL requests and *Valentin* order prove unsuccessful. No reason for Plaintiff's failure to do so appears in the record. In sum, the existence of multiple pre-suit and post-filing discovery procedures and devices that could, if more timely and diligently exercised by Plaintiff, have yielded the identities of the Doe Defendants in this action prior to expiration of the three-year limitations period strongly supports Defendants' contention that Plaintiff has failed to meet the due diligence requirement of § 1024 and thus requires Plaintiff's motion be denied as futile.

In reaching this conclusion, the court does not ignore the practical difficulties confronting a plaintiff seeking to vindicate the Eighth Amendment rights of a murdered prisoner while in DOCCS custody as Plaintiff alleges. However, there is no apparent reason why Plaintiff, represented from the outset by presumably capable counsel, could

not have commenced this action at a much earlier point in time, avoiding the difficulties Plaintiff has encountered in proceeding against unidentified parties in this case.

3.    <u>Failure to State a Claim</u>.

Defendants alternatively contend that even if Plaintiff's proposed amended complaint to name 29 as previously alleged Doe Defendants is not time-barred and thus futile, the proposed amended complaint is nevertheless futile as it fails to state a claim against the 29 proposed defendants because it fails to assert against any of the 29 individual proposed defendants specific grounds plausibly indicating that such defendants personally engaged in conduct amounting to a violation of Blancke's Eighth Amendment rights as required for such cause of action under § 1983.  *See* Defendants' Memorandum, Dkt. 23, at 18-20 (citing cases).  Here, the proposed amended complaint, like the Plaintiff's allegations against the three Defendants in the Complaint, merely names the 29 proposed defendants and alleges that each such defendant "participated directly in the unlawful activity that is the subject of this complaint."  *See, e.g.*, Plaintiff's Exh 2 ¶ 13 (regarding proposed defendant Anthony Edick).  As noted, the Complaint asserts, albeit repeated in Plaintiff's three causes of action, four distinct violations of Blancke's Eighth Amendment rights on the part of all proposed defendants:  (1) creating a serious risk of harm to Blancke by assigning Karris to Blancke's cell with a malicious motive, Complaints ¶¶ 37, 45, (2) failing to provide Blancke with proper medical treatment and care for his alleged bi-polar and ADHD disorders, Complaint ¶¶ 38, 46, (3) failure to timely respond to the assault by Karris upon Blancke by promptly providing medical assistance, Complaint ¶¶ 37, 41, 48, and (4) that Defendants failed to intervene in order to prevent the various resulting harms to Blancke, *i.e.*, Karris's assault, lack of

proper medical care, failure to provide immediate medical assistance after the assault, and Blancke's death.

It is well-established that to avoid a denial of a motion for leave to file an amended complaint based on futility, the proposed amended complaint must be able to withstand a motion to dismiss for failure to state a claim.  *See Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Briggs*, 2016 WL 1296060, at *4 (citing caselaw), *report and recommendation adopted*, 2015 F.Supp.3d 213 (W.D.N.Y. 2016).  "'The proposed amended claim must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action,'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Rather, it 'must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion.'"  *Id.* (quoting *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly,* 550 U.S. at 557)). It is well-established that as a prerequisite to relief under § 1983, a plaintiff must establish a defendant was personally involved in the alleged deprivation.  *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 20106) ("To establish a section 1983 claim, 'a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity.'" (quoting *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004))).  Such personal involvement requires, as relevant to the scenario described in the Complaint and proposed amended complaint, that the "(1) the defendant participated directly in the alleged constitutional violation . . . or "'(5) the defendant exhibited deliberate indifference to the rights of [the plaintiff] by failing to act on information indicating that unconstitutional acts were

31

occurring.'" *Id.* (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). An Eighth

Amendment claim of cruel and unusual punishment based on a failure to protect, treat

or provide medical care requires plaintiff to establish "(1) he was incarcerated under

conditions [of confinement] posing a substantial risk of serious harm, and (2) prison

officials acted with deliberate indifference to his health or safety." *Williams v. Artus*,

2016 WL 3919726, at *3 (May 31, 2016 W.D.N.Y.) (citing *Farmer v. Brennan*, 511 U.S.

825, 834 (1994)), *report and recommendation adopted*, 2016 WL 3882912 (W.D.N.Y.

2016). "A deliberate indifference claim has objective and subjective elements." *Id.*

(citing *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). "[T]o establish the

objective element of an Eighth Amendment claim, a prisoner must prove that the

conditions of his confinement violate contemporary standards of decency." *Phelps v.

Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Helling v. McKinney*, 509 U.S. 25,

35 (1993)). "Concerning the 'subjective' requirement, the Supreme Court has explained

that 'a prison official cannot be found liable under the Eighth Amendment for denying an

inmate humane conditions of confinement unless the official knows of and disregards an

excessive risk to inmate health or safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

Where a plaintiff claims a failure to provide medical care "the alleged deprivation must

be sufficiently serious, in the sense that a condition of urgency, one that may produce

death, degeneration or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553

(1996) (internal citation and quotation marks omitted). Here, the proposed amended

complaint fails to plead any facts which plausibly assert any of the 29 proposed

defendants engaged in conduct upon which individual liability for Plaintiff's alleged

Eighth Amendment violations may be inferred nor are there any allegations of fact upon

which to plausibly infer that any of the proposed named defendants acted with the

prerequisite degree of deliberate indifference with regard to the alleged denial of

Blancke's medical needs or safety. For example, nowhere does the Complaint allege

any Defendant or Doe defendant was even aware Blancke required medical care for

Blancke's alleged bi-polar and ADHD disorders or how it may be inferred that such

persons acted with deliberate indifference to the likelihood that Karris's presence in

Blancke's cell would eventuate in Karris's assault or in fact arranged for Karris's

assignment to the cell. Plaintiff's rote allegation that each Doe defendant "directly

participated in the unlawful activity that is the subject of this Complaint," Complaint ¶ 13,

is simply too generalized and conclusory to state any facts to support a plausible Eighth

Amendment claim against any of the proposed defendants on any of Plaintiff's four

theories of liability based on an awareness of Blancke's medical needs, deliberate

indifference to a serious risk of harm to Blancke that would arise from Karris's double-

celling with Blancke, or that any defendant was personally involved in the alleged

violations. *See Atuahene v. City of Hartford*, 10 Fed.Appx. 33, 34 (2d Cir. 2001)

(complaint that fails to give a defendant fair notice of the nature of a plaintiff's claim and

the grounds upon which it is based is deficient) (internal quotation marks and citations

omitted); *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 212 (2d Cir. 2017) ("'[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice'" to avoid dismissal under the applicable plausibility test (quoting *Ashcroft

v. Iqbal*, 556 U.S. 662, 678 (2009))); *Wright v. Orleans Cty, N.Y.*, 2015 WL 5316410, at

*13 (W.D.N.Y Sept. 10, 2015) ("[p]leadings that fail to differentiate as to which

defendant was involved in the alleged unlawful conduct are insufficient to state a

claim"), *report and recommendation adopted*, 2015 WL 13660397 (W.D.N.Y. Oct. 17,

2015); *Spring v. Allegany Limestone Cent. Sch. Dist.*, 138 F.Supp.3d 282, 293

(W.D.N.Y. 2015) ("Because the personal involvement of a defendant is a prerequisite to

an award of damages under § 1983, a plaintiff cannot rely on group pleading against all

defendants without making specific factual allegations), *vacated in part on other grds,*

655 Fed.Appx 25 (2d Cir. 2016); *Adamou v. Cty of Spotsylvania*, *N.Y.*, 2016 WL

1064608, at * 11 (S.D.N.Y. Mar. 14, 2016) ("Pleadings that fail to differentiate as to

which defendant was involved in the alleged unlawful conduct are insufficient to state a

claim.").  In sum, absent such specific factual allegations to support Plaintiff's claims, it

is implausible to infer from the Complaint and proposed amended complaint that each of

the 29 proposed defendants were personally involved in the several Eighth Amendment

deprivations as Plaintiff has pleaded.  Plaintiff's motion should therefore be denied on

this ground as well.

4.    Good Faith / Prejudice.

Defendants also contend Plaintiff's motion should be denied because Plaintiff

lacks a good faith basis for attempting to include the 29 proposed defendants at this

time and that such an amendment would unduly prejudice Defendants by dramatically

enlarging the scope of discovery causing extensive delay in achieving an earlier

disposition of the case.  Defendants' Memorandum, Dkt. 23, at 21-23.  In opposition

Plaintiff contends Plaintiff has adequately pleaded the required degree of personal

involvement for Plaintiff's Eighth Amendment claims and that as Plaintiff's claims, as

asserted in the proposed amended complaint, are the same as alleged in the Complaint

and as depositions have not commenced, Defendants would not be significantly

prejudiced in their ability to defend should the proposed amendment naming 29 additional defendant be granted. Plaintiff's Reply, Dkt. 24, at 8-9. Plaintiff further contends Plaintiff has a good faith belief for its proposed amended complaint as it is Plaintiff's "belief," Dkt. 24 at 10, that the proposed defendants were responsible for Blancke's medical care, and "involved in the decision to place and/or escort Karris to the [Blancke's] cell and responsible for supervising the area where both Karris and . . . [Blancke] were confined." Dkt. 24 at 10. Notably absent, however, from Plaintiff's assertion is any reference to facts asserted in the proposed amended complaint upon which Plaintiff's "belief" regarding the 29 proposed individual defendants' personal involvement in the alleged conduct directed to Blancke is based. Moreover, Plaintiff does not dispute Defendants' representation that most of the 29 proposed defendants who were also included as potential witnesses in Defendant's Rule 26(a)(1) mandatory disclosures had no direct involvement in the December 14, 2013 assault. Defendants' Memorandum, Dkt. 23, at 21. Defendants also contend that Plaintiff attempts to name Five Points superintendent, Michael Sheahan, Plaintiff's Exh. 2 ¶ 39, deputy superintendent of security Raymond Coveny, *id.* ¶ 40, deputy superintendent of administration F/N/U Thoms, *id.* ¶ 25, and deputy superintendent of programs F/N/U Jones, *id.* ¶ 26, but fails to allege supervisory liability against these proposed defendants. Dkt. 23 at 21. Given the paucity of facts in Plaintiff's allegations, it is also not plausible that these supervisory defendants were personally involved or responsible for Blancke's medical treatment, participated in Karris's assignment to Blancke's cell in order to 'punish' Blancke for his repeated misbehavior or were personally involved in the alleged failure to provide emergency medical care to Blancke or prevent Karris's

assault.  Defendants also assert proposed defendants Dewberry, Sheen, Henderson, Pierce, and Schantz had no involvement in the incident as their activities related only to post-assault functions.  Dkt. 23 at 21.  For example, according to Defendants, proposed defendant Dewberry is the minister who informed Blancke's family of his death.  Plaintiff has not responded to Defendants' contention.  Based on Plaintiff's failure to rebut Defendants' contentions, the court finds Plaintiff lacked a good faith basis to substitute these nine defendants.  *See United States ex. rel. Hayes v. Allstate Ins. Co.,* 686 Fed.Appx. 23, 28 (2d Cir. 2017) ("Leave to amend may be denied based on bad faith."); *United States ex. rel. Takemoto v. ACE, Ltd.*, 157 F.Supp.3d 273, 284 (W.D.N.Y. 2015) (denying leave to amend where the court "condude[d] that [plaintiff] lacked a good faith basis for the allegations of the Amended Complaint.")  Accordingly, Plaintiff's motion should as to these proposed defendants also be denied for lack of a good faith basis.

Additionally, while depositions have not commenced, significant other discovery, particularly, production of over 2,000 pages of documents, has been produced by Defendants and if Plaintiff was allowed to add the proposed new defendants at this time, Plaintiff's discovery requests could potentially be multiplied to include as many as 725 additional interrogatories as well as 29 additional depositions.  Defendants' Memorandum, Dkt. 23 at 24.  Where a proposed amended complaint would greatly expand the scope of discovery leave to amend may be denied.  *See Singh v. N.Y. State Dep't of Taxation & Fin.*, 2011 WL 3273465, at *34 (W.D.N.Y. July 28, 2011) ("a showing that significant additional discovery burdens will be incurred" sufficient basis to deny leave to amend), *report and recommendation adopted*, 865 F.Supp.2d 344 (W.D.N.Y. 2011); *Smith v. Wilson,* 2017 U.S.Dist. LEXIS 125884, at *5 (D.Conn. Aug. 9,

2017) ("If plaintiffs are permitted to add such a significant number of defendants at this stage of the litigation, it would dramatically expand the scope of discovery, resulting in significant delay and hampering the court's ability to efficiently try this case."). Such reasoning is especially applicable where as in this case, the proposed amended complaint purports to assert such defendants' liability "without making concrete allegations that those defendants actually engaged in conduct that violated plaintiff's rights." *Smith*, 2017 U.S. Dist. LEXIS 125884, at *45. Accordingly, Plaintiff's motion should also be denied on the ground of undue prejudice to Defendants.

5.    Plaintiff's Request to Replead.

In Plaintiff's motion, Plaintiff also requested the court to "extend Plaintiff's time to further amend the Complaint in its entirety." Dkt. 21 at 2 ("Plaintiff's request"). As Defendants note, Plaintiff, other than a general statement that the Court "extend Plaintiff's time to further amend the Complaint" and "an extension of time to be allowed [Plaintiff] to further amend the complaint in light of Defendants' anticipated discovery production," does not explain why such permission to replead should be granted. *See* Defendant's Memorandum, Dkt. 23 at 25-26 (referencing Plaintiff's Notice of Motion, Dkt. 21 at 2, and Plaintiff's Memorandum, Dkt. 21-1 at 4-5). Defendants acknowledge responding to Plaintiff's document production requests by producing "thousands of pages of documents." Defendants' Memorandum, Dkt. 23 at 23. Defendants contend, however, that Plaintiff waited until just prior to Plaintiff's deadline, September 22, 2017, for serving such discovery requests provided in the Scheduling Order, Dkt. 16, ¶ 8, *see* Defendants' Memorandum, Dkt. 23 at 25, and thus compromised Plaintiff's ability to move timely for an enlargement of time for motions to amend based on a need to review

such discovery, negating the existence of good cause, which would unduly prejudice Defendants, and constitute a "waste" of judicial time. *Id.* at 25-26. It is unclear from its text whether Plaintiff's request is one for permission to file a further amended complaint or to amend the Scheduling Order pursuant to Fed.R.Civ.P. 16(b) to establish another date before which to a file a further motion for leave to file an amended complaint. Regardless of how it is construed, the court finds Plaintiff's request would, on the record, be futile and as such should be denied.

Generally, a complaint should not be dismissed "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shabazz v. Bezio*, 511 Fed.Appx. 28, 31 (2d Cir. 2013) (*pro se* plaintiff). Nevertheless, "[a] plaintiff need not be given leave to amend if . . . [plaintiff] fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citing *City of Pontiac Policemen's & Firemen's Retirement System v. UBS AG,* 752 F.2d 173, 188 n. 71 (2d Cir. 2014) (denying leave to amend where 'plaintiffs have identified no additional facts or legal theories – either on appeal or to the District Court – they might assert if given leave to amend.")).

To justify an amendment to a Scheduling Order, the requesting party must show good cause, *see* Fed.R.Civ.P. 16(b), meaning that despite the exercise of reasonable diligence, the deadline to be modified could not be met. *BPP Illinois, LLC v. Royal Bank of Scotland Group PLC*, 859 F.3d 188, 195 (2d Cir. 2017) (citing *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003)). Here, even allowing for the possibility that upon completion of Plaintiff's review of the Defendants' produced documents Plaintiff

was now able to particularize the identities of the Doe Defendants who Plaintiff alleges violated Plaintiff's Eighth Amendment rights as being plausibly culpable under any of Plaintiff's theories of liability – failure to treat Blancke's medical conditions, deliberate creation of serious risk to Blancke's safety, a failure to intervene, and a failure to provide prompt medical assistance, Plaintiff makes no effort to indicate how such information could conceivably overcome the deficiencies in Plaintiff's motion to avoid the conclusion that Plaintiff's claim nevertheless became time-barred as of December 14, 2016, and that Plaintiff has therefore failed to state plausible claims for relief.  Specifically, nothing in the proposed amended complaint demonstrates that if Plaintiff were allowed to replead Plaintiff could provide greater descriptive information sufficient to satisfy the requirements of Rule 15(c)(1)(C), that within 90 days of filing the Complaint such Doe Defendants had notice that but for a mistake as to their identity, such defendants would be sued, or constituting facts establishing which of the Doe Defendants were culpably and personally involved in any of Plaintiff's four alleged Eighth Amendment violations, as well as the facts underlying such violations.  Nor does Plaintiff point to any reason to find that with the advantage of Defendants' recent document production in this case, Plaintiff will now be able to demonstrate that Plaintiff provided the required degree of notice to the Doe Defendants and exercised due diligence in seeking the identification of Doe Defendants before the expiration of the statute of limitations as required by Rule 15(c)(1)(C) and § 1024, including N.Y.C.P.L.R. § 306-b, in order to avoid Plaintiff's claims from being time-barred by application of the relation-back relief available under Rule 15(c)(1)(A) and § 1024.  Finally, Plaintiff's unexcused delay in serving discovery requests also prevents finding Plaintiff exercised due diligence in effecting discovery

thus defeating Plaintiff's ability to establish good cause for Plaintiff's request to amend the Scheduling Order in order to enlarge the period for further motions to amend the pleadings. *See Jones v. J.C. Penney's Dept. Stores, Inc.*, 317 Fed.Appx. 71, 75 (2d Cir. Mar. 25, 2009) (finding district court did not abuse discretion in denying plaintiff's request for extension of time under Rule 16(b) where plaintiff's own failure to diligently pursue discovery caused delay and negated good faith). Even assuming Defendants' discovery could assist Plaintiff (significantly, Plaintiff does not indicate that Plaintiff's preliminary review of Defendants' documents has revealed any new information helpful to Plaintiff) in repleading sufficient to avoid a further dismissal for failure to state a claim, Plaintiff's continuing inability to avoid Plaintiff's proposed claims against the Doe Defendants from being time-barred in this case, regardless of any repleading that could state a valid claim, requires Plaintiff's request to replead or amend the Scheduling Order be denied as futile.

6.      Plaintiff's Reply.

Defendants argue that Plaintiff's failure to request in Plaintiff's motion the option to file a reply in accordance with Local R.Civ.P. 7(a)(1) requires the court to disregard Plaintiff's reply. While Defendants are correct that Plaintiff failed to comply with Local Rule 7(a)(1), courts also have authority to waive strict application of local rules, *see* Fed.R.Civ.P. 83(a)(2) ("A local rule imposing a requirement of form must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply."); *Phoenix Global Ventures, LLC v. Phoenix Hotel Associates, Ltd.*, 422 F.3d 72, 76 (2d Cir. 2005) (recognizing "a district court has inherent authority to waive its local rules. . . ."), and as the court finds Plaintiff's Reply to be of assistance in evaluating

the merits of Plaintiff's motion the court will forgo strict application of the Local Rule in this case.

## CONCLUSION

Based on the foregoing, Plaintiff's motion (Dkt. 21) is DENIED.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated:  April 23rd, 2018
         Buffalo, New York