UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
LAURIE ANN SMITH, Individually and as Administratix
of the Estate of THOMAS J. BLANCKE, SR., deceased,

                                 Plaintiff,

   -against-

                                                                 Case No. 16-cv-00906V (F)

ADRIAN BAUGH, GEORGE BROWN,
MICHAEL WOODARD, and JOHN and JANE DOES,
said names being fictitious and presently unknown persons
believed to be correction officers, officers, employees,
staff and/or agents of Five Points Correctional Facility,

                                Defendants.
-------------------------------------------------------------------------X

# PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

                                         Respectfully Submitted,

                                         Derek S. Sells, Esq.
                                         Stephanie R. Correa, Esq.
                                         THE COCHRAN FIRM
                                         Attorneys for Plaintiff
                                         One Exchange Plaza
                                         55 Broadway, 23rd Floor
                                         New York, New York 10006
                                         Tel No.: (212) 553-9215
                                         Fax No.: (212) 227-8763
                                         dsells@cochranfirm.com
                                         scorrea@cochranfirm.com

# TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................................1

FACTS......................................................................................................................2

    POINT I:    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IS PREMATURE ....................................................................................2

    POINT II:    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT MUST BE DENIED AS TO PLAINTIFF'S 42 U.S.C. § 1983 CLAIMS AS THERE EXIST MATERIAL ISSUES OF FACT.........................................5

        A. Standard for Summary Judgment..............................................5

        B. There are genuine issues of material fact as to whether or not the Defendants acted deliberately indifferent to the Decedent..................6

            1.    There are Genuine Issues of Material Fact as to Plaintiff's Failure to Intervene Claim Precluding Summary Judgment.........................................................................8

            2.    There are Genuine Issues of Material Fact as to Plaintiff's Deliberate Indifference Claim as to Decedent's Medical Needs Precluding Summary Judgment......................11

    POINT III:    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY..................................................................................13

    POINT IV:    PLAINTIFF WITHDRAWS HER CLAIM ALLEGING LOSS OF COMPANIONSHIP UNDER 42 U.S.C. § 1983...............................13

CONCLUSION........................................................................................................14

Plaintiff Laurie Smith respectfully submits this memorandum of law in opposition to Defendants' motion for summary judgment.

## PRELIMINARY STATEMENT

Thomas J. Blancke (hereinafter the "Decedent") was transferred into the custody of Five Points New York State Correctional Facility (hereinafter "Five Points") in September 2013. During his incarceration at Five Points, the Decedent was subjected to various violations of his constitutional rights pursuant to 42 U.S.C. § 1983 by the Defendants, Woodard, Brown and Baugh. Initially, he was deprived access to medication necessary to treat his Bipolar and Attention Deficient Hyperactivity Disorder ("ADHD"). Because of Defendants' refusal to allow the Decedent to receive his medication to control his behavior, the Decedent was involved in an October 3, 2013 incident where he was alleged to have been disruptive in a class and attempted to spit at a correction officer. Instead of treating the Decedent, he was disciplined and assigned to Five Points New York State Correctional Facility's Solitary Housing Unit (hereinafter "the SHU"). As Defendants continued to refuse the Decedent his medication, he became uncontrollable and deemed a "problem inmate."

As part of Defendants' scheme to teach the Decedent a lesson for his disruptive behavior and for attempting to spit on a correction officer, the Defendants placed known violent offender, Brian Karris, into the Decedent's cell on December 13, 2013. On December 12, 2013 and December 13, 2013, Karris received two Mental Health Referrals. After receiving his second Mental Health Referral in the span of one day, he threatened a fellow inmate. As such, the Defendants knowingly and deliberately violated the Decedent's civil rights by placing Karris who was already in an agitated state in the same cell as him and this resulted in his death.

1

During the Decedent's and Karris' first evening in Cell A-23, video footage shows more than thirty minutes elapsed between the last time Defendant Baugh, an employee of the New York State Department of Corrections and Community Correctional Facility "NYSDOCCS"), saw the Decedent conscious and when Karris called for a correction officer to tend to the Decedent, which was in violation of the NYSDOCCS guidelines, which requires correction officers to conduct rounds every thirty minutes. By the Defendants not properly conducting rounds every 30 minutes, Karris was allowed to beat the Decedent. Video footage on the A Block hallway captured the audio of Karris assaulting the Decedent, which involved loud yelling and banging sounds that lasted for nearly fifteen minutes. During the course of the assault, none of the named-Defendants intervened despite being able to hear the verbal and physical altercation between Karris and the Decedent in the A-1 gallery.

The Decedent's civil rights were further violated by Defendants' failure to obtain prompt medical attention for him even when they initially found him on the floor of his cell suffering. The Decedent was gasping and experiencing visibly labored breathing for nearly twenty minutes before he was removed from his cell. As a result of the Defendants' delay, the Decedent suffered great pain and suffering prior to his death.

Lastly, the Defendants' motion should also be denied as being premature because the parties have yet to complete discovery. The parties have not conducted any depositions and have not completed discovery on issues critical to the Decedent's Eighth Amendment violations: the Decedent's medical treatment for his Bipolar and ADHD conditions while in custody and Karris' assignment to share a cell with the Decedent. Accordingly, the Defendants' motion for summary judgment is premature pursuant to Federal Rules of Civil Procedure ("FRCP") 56 (f) as the

Plaintiff has not had the opportunity to make the record complete before defending against a motion for summary judgment.

## FACTS

Plaintiff respectfully refers the Court to the Plaintiff's Answer to Defendants' Statement of Undisputed Facts pursuant to Local Civil Rule 56 and Plaintiff's 56.1 Counter Statement.

**POINT ONE**:    **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT IS PREMATURE.**

It is well established in this Circuit that Summary Judgment motions are premature when a party is denied an opportunity to obtain discovery. See Hellstrom v. U.S. Dept of Veterans Affairs, 201 F.3d 94 (2d Cir. 2000). As the Court in Hellstrom made clear, only in the rarest of cases may summary judgment be granted against a Plaintiff who has not been afforded the opportunity to obtain discovery. Id. at 97. See also Sutera v. Schering Corp., 73 F.3d 10, 18 (2d Cir. 1995); Meloff v. New York Life Ins. Co., 51 F.3d 372, 375 (2d Cir. 1995); Jones v. Coughlin, 45 F.3d 677, 680 (2d Cir. 1995).

In Hellstrom, like here, Plaintiff was not able to take depositions, engage in expert discovery or challenge sworn statements submitted in support of the motion. Specifically, the Plaintiff in Hellstrom sought an injunction barring his employer from re-assigning him as grievance proceedings were occurring. The Plaintiff amended his complaint to add claims including a First Amendment protection speech claim. Before the Hellstrom Plaintiff took any depositions or otherwise conduct discovery, the Defendant moved for summary judgment which the District Court granted. The Plaintiff appealed to the Second Circuit arguing that he was denied discovery. The Defendant argued that discovery was not needed because Plaintiff had informal discovery consisting of material from the grievance proceeding which included a five

3

hundred page report, witness sworn testimony and statements attesting to the Plaintiff's poor work history.

The Second Circuit reversed the District Court and found that the motion was decided as being premature. As the Court stated:

> Hellstrom was denied the opportunity to conduct discovery of any sort and was even precluded from taking depositions. Hellstrom did indeed have access to three boxes of information used during the grievance proceedings and two binders containing the administrative record; but that information was compiled exclusively by the VA, and contained only interviews and investigative findings focusing on allegations of Hellstrom's misconduct. The information was not directly pertinent to Hellstrom's First Amendment claims, which form the core of his complaint.

Hellstrom, *supra*, at 97.

The Court went on to find that "[w]ithout the opportunity to undertake his own discovery, Hellstrom did not have a chance to adduce evidence to support this claim." Id. at 98.

Similar to Hellstrom, Plaintiff here has not had an opportunity to conduct depositions regarding Decedent's Eighth Amendment claims and instead must rely on information provided only by Defendants and criminal trial transcripts related to the murder conviction of Karris. As for the Eighth Amendment allegations, none of those issues were directly addressed in the criminal case and the Defendants were not deposed by Plaintiff on those issues. For these reasons, Defendants' motion should be denied.

Although Federal Rule 56(b) permits a party to file a motion "at any time," Courts routinely deny motions for summary judgment when discovery over relevant matters is incomplete. Toussie v. Allstate Insurance Company, 213 F.Supp.3d 444 (E.D.N.Y. 2016). Similar to the facts of the instant case, the Court in Elliott Associates, L.P. v. Republic of Peru, 961 F.Supp. 83, 86 (S.D.N.Y. 1997), stated that "[i]t is the duty of this Court under Rule 56(f) to ensure that the parties have been given a reasonable opportunity to make their record complete

4

before ruling on a motion for summary judgment." When a party must oppose a motion for summary judgment and advises the Court that it needs discovery to be able to present facts to defend against the motion, the Court should defer decision of the motion until the parties have included discovery. G-I Holdings, Inc. v. Baron & Budd, 2002 WL 312517002 (S.D.N.Y. Oct. 8, 2002).

Lastly, the Plaintiff will take the depositions of the named Defendants in this instant matter as the Plaintiff has a pending Court of Claims action, Smith v. State of New York, Claim No. 125901. Accordingly, the Plaintiff respectfully requests the opportunity to conduct depositions of the parties as well as the nonparty witnesses.

**POINT TWO:    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT MUST BE DENIED AS TO PLAINTIFF'S 42 U.S.C. § 1983 CLAIMS AS THERE EXIST MATERIAL ISSUES OF FACT.**

**A.    Standard for Summary Judgment**

Summary Judgment should only be granted when, construing the facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Redd v N.Y. Div. of Parole, 678 F.3d 166 (2d Cir. 2012). The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish their right to judgment as a matter of law. Rodriguez v. City of New York, 72 F.3d 1051 (2d Cir. 1995). The role of the Court is to determine whether there is a genuine issue of fact for trial, not to determine the truth of a matter or weigh evidence. Cioffi v Averill Park Central School District Board of Education, 444 F.3d 158 (2d Cir. 2006). When deciding a summary judgment motion, Courts must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986);

5

Pinto v. Allstate Ins Co., 221 F.3d 394 (2d Cir. 2000). The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in her favor," Anderson v Liberty Lobby, Inc. 477 U.S. 242 (1986), including "questions of credibility and the weight to be accorded to particular evidence." Masson v New Yorker Magazine, 501 U.S. 496 (1991).

For the reasons set forth below, Plaintiff respectfully requests that the Court deny Defendants' Motion for Summary Judgment in its entirety on account of the fact that there are general issues of material fact that should be determined by a trier of fact.

      **B.**     **There are genuine issues of material fact as to whether or not the Defendants acted deliberately indifferent to the Decedent.**

Defendants Baugh and Brown were assigned to conduct rounds of the A-1 Gallery in the early morning of December 14, 2013. When Defendant Baugh conducted his rounds, he failed to monitor the A-1 Gallery in compliance with NYDOCC's guidelines because he did not conduct his rounds every thirty minutes. This violation allowed Karris to physically assault the Decedent for an extended period of time. Moreover, Defendant Baugh purportedly claimed that he did not hear any alarming noises at the time and testified that on that "particular night I didn't hear anything." Exhibit 3 at P. 495, L. 13-17. However, the audio of the assault shows that the Decedent's and Karris' argument could be heard in the A-1 gallery hallway as well as Karris' vicious assault of the Decedent. As such, it is impossible for Defendants George and Baugh to claim they did not hear the Decedent's altercation with Karris.

Defendant Baugh's and Defendant George's conduct stands in stark contrast to the standard established by the Supreme Court. The Supreme Court has long held that prison officials are required to ensure inmates receive adequate food, clothing, shelter and medical care as well as take reasonable steps to guarantee the safety of inmates in their custody. Farmer v.

6

Brennan, 51 U.S. 825, 832 (1994). As part of their duty to ensure the safety of inmates, they must also protect prisoners from assaults by fellow inmates. Id. A prisoner injured or killed while in custody may recover for the violation of his Eighth Amendment rights if the injury resulted from the prison official's purposeful subjection of the prisoner to a "substantial risk of harm" or from the official's deliberate indifference to that risk. Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997). In order to succeed on claim for damages under 42 U.S.C. § 1983, Plaintiff must show by a preponderance of the evidence the Defendant was personally involved in the constitutional violation. Id.

As set forth above, the video footage produced by the Defendants captures the audio of Karris assaulting the Decedent as well as the Defendants' twenty minute delay in removing the Decedent from his cell to bring him to get medical attention. First, the audio captures a loud, undecipherable exchange from the time Defendant Baugh made his 5:08 AM round of Block A-Cell 23 up until the time Defendant Baugh returned to the cell block at approximately 5:49 AM, which was over thirty minutes in direct contravention of the NYSDOCCS Directive 433, § III.A. Exhibit 4 and Exhibit 7, DOCCS Directive 4933, III.A. DOCCS Directive 4933, III.A provides in relevant part that rounds are to be made at least every thirty minutes and during rounds "[e]ach inmate and cell will be observed to ensure that anyone in need of medical attention receives prompt medical care… to guard against misconduct, and to detective fire/safety hazards." Exhibit 7 at P. 18. Defendants George's and Baugh's failure to comply with this rule further shows their personal involvement in the civil rights violations the Decedent was forced to endure.

Starting at approximately 5:30 AM, the exchange between Karris and the Decedent escalates as they start yelling at each other and one of them is heard repeatedly telling the other

to "stop playing" and the other responding, "I am not playing." Exhibit 4. Next, at approximately 5:31 AM, there is additional loud banter between Karris and the Decedent followed by banging noises that become louder at around 5:33 AM. Id. After, either Karris or the Decedent can be heard repeatedly questioning "are you all alright" which is followed by additional loud banging. Id. This pattern continues up until 5:42 A.M. Id. Despite how loud the altercation was and obvious signs that an individual in Cell A-23 was in distress, neither Defendants Baugh, Brown or Woodard intervened.

Once Defendant Baugh returned to Cell A-23 to follow up on a call for assistance by Karris, it took nearly twenty minutes for the Defendants to obtain medical assistance for the Decedent, who he initially believed was suffering from a seizure, a medical emergency. Exhibit 4. Defendant Baugh later recounted that "Blancke was gasping at that time." Exhibit 9, Report of A. Baugh's Interview from the Inspector General Office dated December 14, 2013, SUP00000269. This delay further violated the Decedent's Eighth Amendment rights.

Lastly, summary judgment is inappropriate when subjective determinations regarding a party's state of mind, motive, sincerity or conscience are implicated, summary judgment is inappropriate. Patrick v. LeFrevre, 745 F.2d 153 (2d Cir. 1984). As such, it is inappropriate, especially without depositions, for the Defendants' state of mind to be assessed in a motion for summary judgment.

    1.    There are Genuine Issues of Material Fact as to Plaintiff's Failure to Intervene Claim Precluding Summary Judgment.

The Second Circuit has held that a correction officer displays deliberate indifference when he has adequate time to assess a serious threat against an inmate with a fair opportunity to do so without risking himself, but yet fails to intervene. Rosen v. City of New York, 667

F.Supp.2d 355 (S.D.N.Y. 2009). To prevail on a failure to intervene claim, a Plaintiff must establish that: (1) an officer observed or had reason to know the Plaintiff was involved in a physical altercation with another inmate; (2) the officer had a reasonable opportunity to prevent the attack from continuing; (3) the officers' failure to intervene was deliberately indifferent to a substantial risk to the Plaintiff; and (4) the deliberate indifferent to a substantial risk of harm to the Plaintiff resulted in serious physical injury. Id.

Defendants argue that the Defendants were not aware of a risk to the Decedent until after the incident in question occurred. In support of this argument, they rely on Bridgewater v. Taylor, 832 F.Supp. 2d 337 (S.D.N.Y. 2011). Their reliance on this case is misguided as the Bridgewater Court held that failing to rectify a wrong only applied to ongoing violations. This case is inapposite to the instant matter as the Defendants had knowledge of Karris' violent propensities and failed to take any action to intervene.

Here, the physical assault of the Decedent went on for over fifteen minutes without any intervention from the Defendants, including Defendant Baugh and Defendant Brown, the officers responsible for making rounds on the A Gallery. Exhibit 4. Defendant Baugh who was aware that Karris and the Decedent were the only two inmates up at the time he was making his rounds testified that he only heard "typical gallery noise" and not anything that would cause him concern while he was doing his rounds. Exhibit 3 at P. 485 and P. 498, L. 18-21. According to the log books, there are three entries made from 5:00 AM- 6:00 AM. Exhibit 8, Block Log Book. The entries are 5:00 AM, 5:30 AM and 5:50 AM. Id.. Despite making the rounds himself, Defendant Baugh testified during Karris' criminal trial that he did not make the entry in the log book when he completed his rounds, but Defendant Brown did on his behalf. Exhibit 3 at P. 492-493. The times contained in the log book do not match the times Defendant Baugh

9

appeared making rounds in Exhibit 4. In <u>Fischl</u>, the Second Circuit reversed the grant of summary of judgment based on evidence that the Defendant was in the vicinity of an assault and failed to intervene on behalf of the Plaintiff. The Court held that it was reasonable pursuant to the log book entries, which indicates that within the period of the assault the correction officer was in the vicinity and could have presumably head the ongoing attacks and yelling, but did nothing to stop it. Similar, the log book in the instant matter shows that Defendant Baugh and Defendant Brown were in the vicinity of Cell A-23, especially if Defendant Brown was responsible for logging in Defendant Baugh's rounds. Thus, there is a question of fact as to whether or not Defendants heard the Decedent's and Karris' physical and verbal altercation and failed to take any action to intervene. As a result of the Defendants' failure to intervene in the brutal assault of the Decedent, he suffered from serious physical injuries that resulted in his death. Accordingly, it is a question of material fact as to whether or not Defendant Baugh's, Defendant Woodard's and/or Defendant Brown's inaction rose to the level of deliberate indifference.

When Defendant Baugh got to Cell A-23, he testified that he "was actually very nervous" and that he "didn't know how to react" because he was still on probation. Exhibit 3 at P. 488, L. 10-14. He testified that he was unable to radio for help and instead got another officer, Defendant Brown, to ensure correct protocol was followed since it was obvious that the Decedent was in distress and suffering a medical emergency. <u>Id</u>. at L. 16-21. Defendant Woodard testified that an officer has 30 seconds to notify their supervisor that there is a medical emergency, which Defendant Baugh did not do. <u>Id</u>. at P. 632, L. 23-25. He further testified that he hopes correction officers would "first notify the medical staff and then notify the supervisor"

in cases of a medical emergency. Id. at P. 633, L. 4-10. Again, this is something that Defendant Baugh did not do.

> 2. There are Genuine Issues of Material Fact as to Plaintiff's Deliberate Indifference Claim as to Decedent's Medical Needs Precluding Summary Judgment.

The Defendants have subjected the Decedent to deliberate indifference as to his medical needs throughout his incarceration at Five Points. At the outset, the Defendants did not allow him to receive medication for his Bipolar and ADHD conditions, which resulted in him suffering from behavioral issues. Instead of properly treating the Decedent, he was disciplined and sentenced to serve part of his sentence in the SHU where his behavior continued. Thus, the Defendants wanted to teach the Decedent a "lesson" and placed Karris who was already displaying aggressive behavior in a cell with the Decedent who would have been an irritant triggering Karris' anger. Unlike Karris' former cellmate, the Decedent did not know how to calm Karris because he did not have medication to help control his behavior. Exhibit 12. This failure to address the Decedent's medical needs is an example of the conduct proscribed by the United States Supreme Court. The United States Supreme Court has set forth that deliberate indifference to a prisoner's serious medical needs constitutes "unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104-105 (1976). Moreover, deliberate indifference may be proven when a prison guard intentionally denies or delays access to an inmates' medical care. Id. In order to prevail on a deliberate indifference claim as to an inmate's medical needs and safety, the following must be established:

> "[a] prisoner must satisfy two requirements- one objective and one subjective- in order to prevail on such a deliberate indifference claim. First, the prisoner must prove that the alleged deprivation of medical treatment is, in objective terms, sufficiently serious-that is, the prisoner must prove that his medical need was a condition of urgency, one that may produce death, degeneration, or extreme pain. Second, the prisoner must prove that the

11

charged official acted with a sufficiently capable state of mind. This requires that the prisoner prove that the charged officials knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the indifference could be drawn that a substantial risk of serious harm exists, and he must also draw the indifference."

Hart v. Blanchette, 149 Fed.Appx.45, 46 (2d Cir. 2005). A severe medical condition exists where "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).

After the Decedent was physically assaulted by Karris, he was left lying on the ground in visible pain for twenty minutes. Exhibit 4. There is no testimony from either Defendants Baugh or Brown that they made attempts to look closer at the Decedent while he was on the ground to assess the gravity of his condition. When Defendant Woodard entered the Decedent's cell, he saw that there "was a large amount of blood under the Decedent's head." (Declaration of Woodard dated August 15, 2018). Defendant Woodard also admitted that he was delayed in getting to the Decedent as he failed to give an order that would allow the gates to open for him promptly despite knowing that the Decedent was suffering from a medical emergency. Exhibit 3 at P. 635, L. 3-13. With respect to the first prong, it was clear that the Decedent's condition was one of urgency. And, as for the second element, Defendants' lag in removing him from the cell and transporting him to medical was deliberately indifferent to the Decedent's safety and wellbeing.

Defendant Woodard testified that when he arrived to the cell, he saw that Defendants Baugh and Brown as well as other correction officers were putting mechanical restraints on Defendant Karris. Exhibit 3 at P. 646, L. 10-13. Initially, Defendant Woodard was concerned because it is not procedure to have an inmate in restraints when his cellmate is not. Id. at P. 647,

L. 6-12. Thus, it is clear that Defendants Brown and Baugh disregarded protocol because they were fully aware of the gravity of the Decedent's physical condition. Accordingly, summary judgment must be denied.

### POINT THREE: DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

Correction Officers have a duty to protect inmates from violence perpetuated by other inmates. Dennis v. Westchester County Jail Correctional Department, 485 Fed.Appx 478 (2d Cir. 2012). Correction Officers are only entitled to qualified immunity if (1) their actions did not violate clearly established law or (2) it was objectively reasonable for them to believe that their actions did not violate such law. Id. In determining whether the Defendants' actions were objectively reasonable, a jury must make determinations on the underlying disputed issues of facts. Kerman v. City of New York, 374 F.3d 93 (2d Cir. 2004).

Here, the Defendants violated the Decedent's constitutional rights by acting with deliberate indifference to his safety in failing to protect him from harm inflicted on him by fellow inmate Karris, delaying him from seeking immediate medical treatment resulting in him suffering from extreme pain prior to his death, and refusing to administer medication to him that would control his ADHD and Bipolar symptoms. As such, dismissal on the basis of a qualified immunity is inappropriate when exist genuine issues of material fact exist as to the determination of the "reasonableness" of a Defendants' conduct. Rosen v. City of New York, 667 F.Supp.2d 355 (S.D.N.Y. 2009).

### POINT FOUR: PLAINTIFF WITHDRAWS HER CLAIM ALLEGING LOSS OF COMPANIONSHIP UNDER 42 U.S.C. § 1983.

Plaintiff withdraws her claim alleging loss of companionship under 42 U.S.C. § 1983. See Garmon v. County of Rockland, 2013 WL 541380 (S.D.N.Y. Feb. 11, 2013).

## CONCLUSION

For the reasons set forth above, the Plaintiff respectfully requests the Court denies Defendants' Motion in its Entirety.

Dated: New York, New York
October 15, 2018

Respectfully Submitted,

THE COCHRAN FIRM

_____
Derek S. Sells, Esq.
Stephanie R. Correa, Esq.
Attorneys for Plaintiff
55 Broadway, 23rd Floor
New York, New York 10006
Tel No.: 212-553-9215
Fax No.: 212-227-8763

TO:

Joel J. Terragnoli, Esq.
Assistant Attorney General of Counsel to Barbara Underwood
Attorney General of the State of New York
Main Place Tower, Suite 300A
350 Main Street
Buffalo, New York 14202